IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DIANNA ROBERTS,                                    CV 02-499-BR

        Plaintiff,                               OPINION AND ORDER

v.

WMC MORTGAGE CORP.; FINANCIAL LINK;
DAVE LAVALLEY; NORTHWEST TRUSTEE
SERVICES, LLC; BANK ONE, N.A.;
CHICAGO TITLE INSURANCE COMPANY
OF OREGON; MARGARET A. HARBAUGH;
CAROLYN KNAUB; and REGIONAL TRUSTEE
SERVICES CORPORATION,

        Defendants.


DIANNA ROBERTS
17932 N.E. Wasco
Portland, OR  97230

        Plaintiff, *Pro Se*


LINDA JOHANNSEN
JOHN E. KENNEDY
Preston Gates & Ellis LLP
222 S.W. Columbia Street, Suite 1400
Portland, OR  97663
(503) 248-9085


1 - OPINION AND ORDER

Attorneys for Defendants

**BROWN, Judge.**

This matter comes before the Court on the Motion for Summary Judgment (#217) filed by Defendants WMC Mortgage Corporation; Bank One, N.A.; and Fairbanks Capital Corporation, and Plaintiff's [Cross] Motion for Summary Judgment (#229). For the following reasons, the Court **DENIES** Plaintiff's Motion and **GRANTS in part** and **DENIES in part** Defendants' Motion.


## BACKGROUND

In her First Amended Complaint, Plaintiff asserts six claims. Plaintiff's First Claim is against Defendants WMC, Bank One, and Fairbanks for violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq.* Plaintiff's Second Claim is against the same three Defendants for violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.* Plaintiff's Third, Fourth, and Sixth Claims are common law claims of misrepresentation, unilateral mistake, and fraudulent alteration against WMC only. Plaintiff's Fifth Claim is against WMC only for violation of Oregon's Unfair Trade Practices Act (UTPA), Or. Rev. Stat. § 646.605, *et seq.*

Plaintiff has voluntarily dismissed her claims against all other Defendants.

2 - OPINION AND ORDER

Defendant Bank One also asserts a counterclaim for judicial foreclosure.

## **FACTS**

The record in this case is extremely difficult to follow.

Plaintiff provides multiple copies of the same pages of her deposition transcript and attaches them to her Affidavit in no discernible order.  Although both Plaintiff and Defendants mark documents as exhibits to their respective Affidavits, neither cites to any document by its exhibit number.  Defendants, moreover, force the Court to follow a rabbit trail to find the documents they rely on to support their factual assertions.  For example, in their supporting memoranda, Defendants cite to their Concise Statement of Facts rather than to the source document that supports the factual assertion.  In their Concise Statement, in turn, Defendants cite to various affidavits, primarily the Affidavit of John E. Kennedy, one of Defendants' attorneys. Although Kennedy attaches deposition transcripts as exhibits to his Affidavit, he also unnecessarily summarizes these transcripts.[1]  Each of Kennedy's summaries contains a reference to a deposition transcript page number, but does not identify the

---

[1]  Kennedy's summaries of the deposition testimony are not admissible evidence, and, therefore, the Court does not rely on them.  The Court considers only the transcripts and other exhibits attached to Kennedy's Affidavit.

exhibit letter or the exhibit page number.

To find the source of any particular factual assertion, therefore, the Court first must find the cited paragraph in Defendants' Concise Statement of Facts, locate the paragraph in the Kennedy Affidavit that is cited in the Concise Statement, and then search through the many pages attached to the Kennedy Affidavit to find the referenced page. Compounding the problem, Plaintiff followed Defendants' inefficient and confusing method when she prepared her response and [Cross] Motion for Summary Judgment.

This method of preparing a factual record is, to say the least, cumbersome. Nonetheless, after a painstaking review of the record, the Court finds many of the facts asserted by Defendants are disputed by Plaintiff and controverted by Plaintiff's testimony. Most of these disputed facts, however, are not material to the issues before the Court. In any event, the following facts appear to be uncontroverted.

Plaintiff is the owner of a home located at 17932 N.E. Wasco, Portland, Oregon, which is her primary residence. Plaintiff purchased the property in 1974, and by 1996 she had paid off all mortgages and owned the property outright. Between July 11, 1997, and August 7, 1997, however, Plaintiff borrowed $77,000 from Joy Masako and Mitsuyo Taira on promissory notes at 15 percent interest secured by Plaintiff's home.

4 - OPINION AND ORDER

In January 1998, Plaintiff began the process of refinancing her home in order to pay off the promissory notes. Plaintiff hired David LaValley, a mortgage broker with Financial Link, to help her find a loan.[2] On April 1, 1998, LaValley prepared and Plaintiff signed a Uniform Residential Loan Application. Shortly thereafter, LaValley procured an adjustable rate mortgage loan (ARM) for Plaintiff through Northern Pacific Funding Group. On April 17, 1998, Plaintiff signed the loan documents at the office of Chicago Title Insurance Company of Oregon. Three days later, on April 20, 1998, Plaintiff rescinded the loan by Western Union telegram because she did not want an ARM.

LaValley apparently continued to search for a loan for Plaintiff. On August 19, 1998, LaValley faxed to Plaintiff a Federal Truth-in-Lending Disclosure Statement (HUD-1) and a Good Faith Estimate. Plaintiff signed both documents and faxed them back to LaValley the same day.[3] The HUD-1 includes a statement that the loan contains a "variable rate feature." The lender is not identified on this document. Kennedy Aff. Ex. C at 18.

------

[2] Plaintiff originally named LaValley and Financial Link as Defendants, but she later voluntarily dismissed her claims against them.

[3] Plaintiff denies signing many of the documents that appear to bear her signature. It is unclear, however, whether she denies signing the August 19, 1998, HUD-1. In any event, Plaintiff admits she received the HUD-1 prior to closing. *See* 1st Am. Compl. ¶ 38, and Ex. G.

5 – OPINION AND ORDER

Ultimately, Plaintiff entered into a loan with WMC.  The closing on this loan took place on August 26, 1998, at Chicago Title.  Carolyn Knaub, an escrow officer with Chicago Title, handled the closing.  The loan was secured by a Deed of Trust on Plaintiff's residence.  Part of the WMC loan proceeds were used to pay in full the Masako and Taira promissory notes, and Plaintiff received approximately $20,000 of the loan proceeds. The record is unclear as to which documents Plaintiff signed and/or received at closing.  Plaintiff repeatedly refuses to acknowledge receipt of documents or to confirm her signature on them on the basis that the exhibits presented at her deposition were photocopies.  In addition, at Plaintiff's deposition, defense counsel failed to follow up adequately on Plaintiff's denials.  In any event, Plaintiff admits she did not read the documents she received either during closing or at any point thereafter.

On September 4, 1998, a Deed of Trust showing Dianna Roberts as the grantor, Regional Trustee Services Corporation as the trustee, and WMC as the beneficiary was recorded in Multnomah County.

On September 1, 1998, WMC Secured Assets Corporation (WMC Secured Assets), WMC, and FNBC entered into a Pooling and Servicing Agreement.  By virtue of this Agreement, WMC Secured Assets transferred all right, title, and interest in Plaintiff's

6 - OPINION AND ORDER

mortgage and trust deed to FNBC.  WMC is identified in the Agreement as the "Master Servicer."  The Deed of Trust, however, shows WMC as the beneficiary, and an Adjustable Rate Note shows WMC as the lender.  WMC Secured Assets does not appear on either the Note or the Deed of Trust.  It is unclear, therefore, how WMC Secured Assets acquired any right, title, or interest in Plaintiff's loan.  The significance of the Pooling and Servicing Agreement is also unclear because only parts of the Agreement are in the record, and none of the parties explains the function of the document or its relevance to Plaintiff's claims.

On September 25, 2000, an assignment of Plaintiff's Deed of Trust was recorded in Multnomah County, which showed WMC had assigned the Deed of Trust to First National Bank of Chicago (FNBC).  Although the Assignment is dated June 16, 2000, Plaintiff contends the assignment from WMC to FNBC occurred sometime before September 4, 1998.  Bank One is a successor to FNBC by virtue of a merger, and FNBC changed its name to Bank One effective September 13, 1999.  Defendants, however, do not explain why the Assignment dated June 16, 2000, reflects the name FNBC instead of Bank One.

On or about August 6, 2001, nearly three years after entering into the loan with WMC, Plaintiff sent a "notice of rescission" to WMC's legal counsel, Michael Mayer, in Woodland Hills, California.  Plaintiff also sent a copy of the notice to

7 - OPINION AND ORDER

WMC's corporate legal department in Salt Lake City, Utah.
Plaintiff did not send the notice to Bank One.

Plaintiff has not made any payments on the loan since May 1,
2001.

## STANDARDS

Fed. R. Civ. P. 56(c) authorizes summary judgment if no
genuine issue exists regarding any material fact and the moving
party is entitled to judgment as a matter of law. The moving
party must show the absence of an issue of material fact. *Leisek
v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In
response to a properly supported motion for summary judgment, the
nonmoving party must go beyond the pleadings and show there is a
genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party.'"
*Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th
Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
242, 248 (1986)). The Court must draw all reasonable inferences
in favor of the nonmoving party. *Id*. A mere disagreement about
a material issue of fact, however, does not preclude summary
judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir.
1990). When the nonmoving party's claims are factually
implausible, that party must come forward with more persuasive

evidence than otherwise would be required.  *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998) (citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).


### DISCUSSION

### I.   Plaintiff's TILA damages claim (First Claim)

An action for damages for violation of TILA must be brought within one year from the date of the occurrence of the violation. 15 U.S.C. § 1640(e).  Plaintiff alleges Defendants violated TILA in numerous respects arising from the closing of Plaintiff's loan with WMC.  Defendants seek summary judgment on Plaintiff's TILA damages claim on the ground that Plaintiff filed this action on April 17, 2002, more than three years after the loan was closed on August 26, 1998.  The Court finds there is no issue of material fact concerning this aspect of Defendants' Motion and, therefore, the Court holds Plaintiff's claims for damages under TILA are time barred.

## II.  Plaintiff's TILA recission claim (First Claim)

Plaintiff also seeks to rescind her loan transaction with WMC pursuant to TILA.  In a consumer credit transaction in which the creditor acquires a security interest in the borrower's principal residence, TILA allows the borrower to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the rescission forms and other information required under the statute.  15 U.S.C. § 1635(a).  If the creditor fails to provide the required disclosures, the borrower's right to rescind the transaction extends for three years after the consummation of the transaction or until the property is sold, whichever occurs first.  15 U.S.C. § 1635(f).  Plaintiff contends Defendants failed to provide her with the required notice of right to rescind and, therefore, her right to rescind the loan transaction extended until August 26, 2001.

Defendants, on the other hand, assert they are entitled to summary judgment as to Plaintiff's rescission claim for three reasons.  First, Defendants assert Plaintiff received two copies of her right to rescind at closing.  Second, Defendant Bank One contends it is entitled to summary judgment because Plaintiff failed to provide it with notice of her intent to rescind the transaction within the three-year time period.  Third, Defendant Fairbanks Capital argues it cannot be held liable for any claims

10 - OPINION AND ORDER

under TILA because it is neither a creditor nor an assignee.

**A.  Notice of right to rescind**

Federal regulations required WMC to deliver to Plaintiff two copies of the notice of right to rescind.  *See* 12 C.F.R. § 226.23(b)(1).  Plaintiff contends she did not receive two copies of the required notice, and, therefore, her right to rescind extended three years beyond the date of closing until August 26, 2001.

Although the record on this point is confusing, Plaintiff admits she signed one copy of the required notice at the time of closing, and that copy was retained by Chicago Title.  Directly above Plaintiff's signature on the notice is the following language:  "I/We acknowledge receipt of two copies of NOTICE OF RIGHT TO CANCEL."  Plaintiff also admits an unsigned copy of the notice was included in the papers she was given at closing and took home.  Plaintiff, nonetheless, repeatedly denies she received two copies of the notice of right to rescind.  Plaintiff does not contend she was misled by the Notice Of Right to Cancel nor that she did not understand her rescission right.  Indeed, three months earlier, Plaintiff successfully rescinded a loan transaction within TILA's three-day period because she was dissatisfied with the interest rate.  Plaintiff argues only that Defendants failed to satisfy the requirements of TILA because Plaintiff contends the regulations required WMC to obtain

11 – OPINION AND ORDER

Plaintiff's signature on two copies of the notice and to allow Plaintiff to retain both signed copies.

Under the regulation, the creditor is required to "deliver two copies of the notice of the right to rescind" to the borrower.  12 C.F.R. § 226.23(b)(1).  The model notice included in Appendix H includes the statement:  "Keep one copy of this notice because it contains important information about your rights."  *Id.*, App. H-8.  This language supports Defendants' position that the regulation is satisfied when the borrower is given two copies at closing but retains only one.

The uncontroverted evidence shows Defendant delivered two copies of the notice to Plaintiff at closing.  Plaintiff retained one copy, and Chicago Title retained the other.  The regulation requires nothing more.  Accordingly, based on the undisputed facts, the Court concludes WMC provided Plaintiff with adequate notice of her right to rescind at closing on August 26, 1998.  As a result, Plaintiff's right to rescind the transaction expired three business days later.  The Court, therefore, holds Defendants are entitled to summary judgment on Plaintiff's TILA rescission claim.

### III. Plaintiff's FDCPA Claim (Second Claim)

Plaintiff alleges Defendants WMC, Bank One, and Fairbanks violated 15 U.S.C. § 1692g(a)(3), (4), and (5).  Plaintiff alleges as follows:

12 - OPINION AND ORDER

> With prior knowledge of Plaintiff's "Notice of
> Rescission" . . . Trustee's Notice of Sale . . .
> was sent on or about December 21, 2001, . . . and
> the purported "Notice of Trustee's Sale" sent by
> Northwest Trustee Services, LLC, acting as agent
> and trustee for Fairbanks Capital Corporation,
> Attorney In Fact For Bank One (sic), did not
> contain any statement required by 15 U.S.C.
> § 1692(g)(a) in subparagraphs (3), (4) and (5)
> thereof, which requires that a debt collector, at
> the time of or within five days of the initial
> communication with the debtor, to send the debtor
> statements that the alleged debt will be assumed
> valid unless disputed within thirty days, that the
> collector will obtain verification of the alleged
> debt and mail the same to the debtor if disputed
> within thirty days, and that the debt collector
> will provide the debtor with the name and address
> of the original creditor if requested within
> thirty days.

Pl.'s 1st Am. Verified Compl. ¶ 78.  Plaintiff apparently
contends Northwest Trustee Services, LLC, violated the FDCPA when
it sent the Trustee's Notice of Sale.  Northwest Trustee
Services, however, is no longer a Defendant in this action.

Plaintiff also makes numerous allegations regarding Bank
One's status as successor trustee, WMC's assignment of the Deed
of Trust, and the status of Fairbanks.  It is unclear, however,
how these allegations relate to Plaintiff's FDCPA claim.

In addition, Plaintiff alleges Defendants violated various
subsections of "15 U.S.C. §§ 807(10), 807(12), 808(6)(A), and
812(a)."  No such statutes, however, exist.  Plaintiff does not
make any argument concerning these alleged statutes in her
response to Defendant's Motion for Summary Judgment or her own

[Cross] Motion for Summary Judgment. The Court, therefore, concludes Plaintiff has abandoned these allegations.

Plaintiff also alleges Defendants violated 15 U.S.C. § 1692g(b), which provides:

> If the consumer notifies the debt collector
> in writing within the thirty-day period
> described in subsection (a) of this section
> that the debt, or any portion thereof, is
> disputed, or that the consumer requests the
> name and address of the original creditor,
> the debt collector shall cease collection of
> the debt, or any disputed portion thereof,
> until the debt collector obtains verification
> of the debt or a copy of a judgment, or the
> name and address of the original creditor,
> and copy of such verification or judgment, or
> name and address of the original creditor, is
> mailed to the consumer by the debt collector.

Plaintiff alleges she timely disputed her debt, but Defendants failed to obtain verification of the debt and continued their collection efforts in violation of § 1692g(b). In her Complaint, Plaintiff does not identify which of the three Defendants allegedly violated this statute nor does she identify any specific improper collection efforts other than those allegedly made by Northwest Trustee Services who, as noted, is no longer a party to this action.

Defendants contend they are entitled to summary judgment as to this claim because it arises from Plaintiff's rescission claim and Plaintiff's rescission claim fails. Defendants, however, do not cite any authority for this assertion nor do they provide any

14 - OPINION AND ORDER

analysis.

The requirements of § 1692g(b) are triggered when a debtor disputes a debt.  This Court has not found any authority to support the proposition that a debt collector is retroactively relieved from its statutory obligation because a court ultimately concludes the debtor's dispute was without merit.  Absent such authority, the Court concludes Defendants are not entitled to summary judgment on the basis that the Court has rejected Plaintiff's TILA rescission claim.

Defendants Bank One and WMC also argue they are entitled to summary judgment because the FDCPA applies only to debt collectors who collect debts that are "owed or due or asserted to be owed or due another." *See* 15 U.S.C. § 1692a(6).  The FDCPA, therefore, protects consumers only against those entities who collect debts for third parties.  To the extent they attempted to collect Plaintiff's debt, Defendants WMC and Bank One argue they did so on their own behalf rather than on behalf of any other entity and, therefore, the FDCPA does not apply.  The record does not reflect any evidence to support Plaintiff's assertion that either Bank One or WMC attempted to collect a debt on behalf of someone else.

Accordingly, the Court concludes the FDCPA does not apply to Defendants WMC and Bank One in this case, and, therefore, they are entitled to summary judgment as to this claim.  Fairbanks,

 15 - OPINION AND ORDER

however, has not established it complied with the FDCPA and, therefore, the Court concludes it is not entitled to summary judgment.

## IV.   Plaintiff's UTPA Claim Against WMC (Fifth Claim)

Plaintiff alleges WMC used unconscionable tactics in connection with the loan transaction in violation of the UTPA, specifically Or. Rev. Stat. § 646.607.  The UTPA, however, does not apply to loan transactions. *Cullen v. Inv. Strategies, Inc.*, 139 Or. App. 119, 127 (1996)(a loan is not a "good" or a "service" for UTPA purposes).  Accordingly, the Court concludes WMC is entitled to summary judgment as to Plaintiff's Fifth Claim.

## V.   Plaintiff's Misrepresentation Claim Against WMC (Third Claim)

In her First Amended Complaint, Plaintiff identifies the following alleged misrepresentations:

1.   Closing documents for the WMC loan were dated August 21, 1998, even though the date of closing was August 26, 1998, and the escrow agent told Plaintiff the loan could not close unless Plaintiff signed the documents as dated.

2.   Plaintiff was not informed of WMC's complete written closing instructions or of a fax from WMC to Chicago Title

concerning the date of documents.[4]  The fax letter reads:

TO ALL LOAN CLOSERS!!!!!

**DO NOT** UNDER ANY CIRCUMSTANCE CHANGE THE

DATE OF ANY OF OUR LOAN DOCUMENTS.

IT IS COMPLETELY ACCEPTABLE FOR A BORROWER TO

SIGN THEIR DOCUMENTS ON OR ANYTIME AFTER THE

DATE OF THE ACTUAL DOCUMENT.

IF YOU CHANGE ANY DOCUMENT DATES, YOU MAY BE

HELD RESPONSIBLE FOR ANY FEES REQUIRED TO

CORRECT ANY RESULTING PROBLEMS WHICH COULD

HOLD UP THE FUTURE SALE OF THIS LOAN.

PLEASE **DO NOT CHANGE OUR DOCUMENT**

**DATES!**

Plaintiff asserts she would not have entered into the loan transaction if she had known of these instructions, but she does not explain why this information was material to her decision to go forward with the loan.

3.  WMC or its agents told Plaintiff that "consideration was to be paid prior to Defendant's receiving the original purported Deed of Trust, dated August 26, 1998, before delivery

---

[4] Plaintiff's signature, however, appears on WMC's written closing instructions, which are attached to her First Amended Complaint as Exhibit R.

of said purported Deed of Trust to WMC."  Plaintiff contends WMC
took possession of the Deed of Trust before it paid
consideration.

4.   Plaintiff alleges WMC represented the Deed of Trust
would include a lender, a borrower, and a trustee.  Plaintiff
contends a trustee was not appointed "nor was the Trustee
informed of any appointment as Trustee, nor was the Trustee ever
paid any consideration to act as Trustee."

5.   Plaintiff alleges "at all times material during the
commercial transaction with the Defendant, the mortgage was
presented as a fixed rate."  Plaintiff alleges she did not
discover the loan actually carried an adjustable rate until
December 18, 2000.

Without addressing any of these allegations specifically,
WMC contends Plaintiff's misrepresentation claim is barred by
Oregon's two-year statute of limitations.

Or. Rev. Stat. § 12.110(1) provides:

> An action for . . . any injury to the person
> or rights of another, not arising on
> contract, and not especially enumerated in
> this chapter, shall be commenced within two
> years; provided, in an action at law based
> upon fraud or deceit, the limitation shall be
> deemed to commence only from the discovery of
> the fraud or deceit.

Under Oregon law, the term "discovery" is interpreted
objectively and the period of limitations, therefore, began to

run when Plaintiff knew or should have known of the alleged misrepresentation. *See Mathies v. Hoeck*, 284 Or. 539, 542, 588 P.2d 1 (1978). WMC argues Plaintiff should have known of any alleged misrepresentation at the time of closing because she was given copies of her loan documents for her records. She, however, admits she failed to read them. WMC apparently contends if Plaintiff had read the closing documents, she would have discovered all of the alleged misrepresentations.

It is uncontroverted that the adjustable interest rate was disclosed in the documents Plaintiff received at closing. Although Plaintiff alleges she was not given time to read the documents at the time of closing, she also admits she did not attempt to read any of the documents even after she took them home. If she had done so, she would have discovered the loan carried an adjustable interest rate. The Court, therefore, holds Plaintiff's claim that WMC misrepresented the interest rate on her loan is time barred.

As to the other alleged misrepresentations, Plaintiff admits she never spoke with anyone at WMC before or during the closing of her loan transaction, and all representations about the loan were made by Dave Lavalley of Financial Link. Although Plaintiff dismissed her claims against Lavalley and Financial Link, she contends WMC is responsible for Lavalley's representations because Lavalley was acting as WMC's agent. Plaintiff, however,

19 - OPINION AND ORDER

does not offer any evidence to support her contention.  Plaintiff admits Lavalley was employed by Financial Link, and she hired him to help her obtain financing.  Plaintiff's conclusory allegation concerning Lavalley's status, however, is not sufficient to create a fact question.  In the absence of evidence of any misrepresentation to Plaintiff by WMC or someone acting on its behalf, WMC cannot be liable for misrepresentation.

## VI.  Plaintiff's Unilateral Mistake Claim Against WMC (Fourth Claim)

Plaintiff alleges she was mistaken in her understanding of the terms of the loan agreement because she did not know the loan had an adjustable interest rate.  Plaintiff alleges WMC "intentionally misled plaintiff and concealed the actual terms of the loan agreement from her."  Plaintiff, therefore, contends the loan agreement is unenforceable, and she is entitled to rescission.

"In order to avoid a contract on account of a unilateral mistake it is necessary that there be a mistake, that the mistake is basic and known to the other party, or that the circumstances are such that the other party, as a reasonable person, should have known of the mistake."  *Gardner v. Meiling*, 280 Or. 665, 675, 572 P.2d 1012 (1977).  Rescission is not permitted if the mistaken party was "guilty of gross negligence in making the mistake."  *Id.* at 675.  Plaintiff, as the mistaken party, has the

20 - OPINION AND ORDER

burden of proving she was not grossly negligent. *Mariah Investments, Ltd. v. McCabe*, 163 Or. App. 91, 109, 986 P.2d 1209 (1999)(Landau, J., dissenting).

WMC argues Plaintiff was grossly negligent when she failed to discover the adjustable interest rate because the rate was disclosed on at least six documents signed by Plaintiff at closing. Plaintiff does not dispute the fact that the adjustable rate was disclosed in the documents she received at closing nor does she offer any explanation for her failure to read the documents after she left the escrow office. In addition, Plaintiff does not offer any evidence to satisfy her burden to prove her mistake was not due to her own gross negligence.

To assess whether the mistaken party was grossly negligent, the court looks "to the extent to which the correct information was readily available." *Id.* at 110. The information concerning the adjustable interest rate was in Plaintiff's possession when she walked out of the escrow office and, therefore, could not have been more readily available to Plaintiff. Accordingly, the Court concludes Plaintiff's failure to review the loan documents that clearly disclosed the facts about which Plaintiff alleges she was mistaken constitutes gross negligence, and Plaintiff is not entitled to rescission on the basis of unilateral mistake.

## VII. Plaintiff's Claim for Fraudulent Alteration Against WMC(Sixth Claim)

21 - OPINION AND ORDER

Plaintiff repeats her allegations that WMC represented to her that the loan had a fixed interest rate, and she asserts she would not have agreed to a loan with an adjustable rate.[5]   The gist of Plaintiff's Sixth Claim, however, actually appears to be her assertion that sometime between August 27, 1998, and September 4, 1998, a document titled "Adjustable Rate Rider" was added to the Deed of Trust after the loan closed.   Although the Rider appears to bear Plaintiff's signature, Plaintiff denies she signed it and asserts she did not see the Rider among the closing documents.

Defendants contend the Adjustable Rate Rider was presented to Plaintiff, signed by her during closing, and was a part of the Deed of Trust at all times.   The escrow agent testified the Rider was among the loan documents signed by Plaintiff at closing. After closing, the escrow agent sent the original Deed of Trust, including the Adjustable Rate Rider, directly to Multnomah County for recording.   Defendants further argue Plaintiff's allegation that she "did not see" the Rider does not create a fact question as to whether the Rider was part of the Deed of Trust because Plaintiff admits she did not read the documents that she signed at closing.   Accordingly, Defendants contend Plaintiff has not

---

[5] It is unclear how these allegations are relevant to a claim for fraudulent alteration of documents.  In any event, as noted, Plaintiff admits no one from WMC made any representation to her regarding the interest rate on her loan.

presented any evidence to support her claim of "fraudulent alteration" of the Deed of Trust.

Plaintiff admits the Adjustable Rate Rider was recorded in Multnomah County together with the Deed of Trust on September 4, 1998. Although the Rider is signed "Dianna Roberts ud," Plaintiff denies this is her signature. Plaintiff admits she signed other documents during closing and placed the letters "ud" after her signature to indicate she was signing under duress because she was not given adequate time to review the documents before signing. Plaintiff alleges the Rider may have been altered by an individual with the initials "ELF" because those letters appear on some of the loan documents. Plaintiff also alleges she does not know who "ELF" is or what these letters represent. Defendant, however, has presented evidence that the letters ELF are a trademark representing Electronic Laser Forms, the company that printed the forms. Plaintiff has not presented any evidence to controvert Defendants' explanation of the ELF letters nor identified any other evidence to support her claim that the Deed of Trust was fraudulently altered by adding the Adjustable Rate Rider after closing.[6]

In summary, the Court concludes the only evidence in the

---

[6] Plaintiff raises several objections to Defendants' affidavits. The Court, however, finds Defendants' affidavits to be admissible and Plaintiff's objections to be without merit.

record establishes the Adjustable Rate Rider was part of the Deed
of Trust at closing and at the time the loan documents were
recorded.  Plaintiff's assertion that she "did not see" the
Rider, combined with her testimony that she did not read any of
the documents presented to her at closing, does not create a fact
question on this issue.  In addition, the Court concludes
Plaintiff has not presented any evidence from which a trier of
fact could find the Deed of Trust was fraudulently altered after
closing.  Accordingly, the Court holds WMC is entitled to summary
judgment as to this claim.

**VIII.  Defendants' Counterclaim for Judicial Foreclosure**

Defendant Bank One asserts it is entitled to a judgment of
foreclosure because it has established it is the holder of the
note and the beneficiary of the Deed of Trust by assignment from
WMC and Plaintiff is in default of her obligation under the Deed
of Trust.

Or. Rev. Stat. § 86.710 provides a trust deed "may be
foreclosed by the beneficiary as provided by law for the
foreclosure of mortgages on real property."  Plaintiff admits she
failed to make the payments required under the Note, but she
argues Bank One is not entitled to foreclosure because Bank One
has not established it has any interest in the Deed of Trust.[7]

---

[7]  Plaintiff actually argues Bank One has not established it
is a "successor trustee."  Bank One, however, is a beneficiary

Plaintiff, however, ignores evidence in the record that establishes Bank One and FNBC are one and the same. The record is uncontroverted that WMC assigned its interest in the Deed of Trust to FNBC, and that FNBC currently does business as Bank One. The Court concludes Bank One, therefore, is the current beneficiary under the Deed of Trust.

Bank One, however, does not adequately set forth all of the elements necessary to establish entitlement to judicial foreclosure. Bank One's Motion contains little more than a statement that it is the holder of a Note that Plaintiff has failed to pay. Bank One does not state whether any subordinate lien claimants exist, whether any other actions to collect the debt are pending, or the status of Plaintiff's bankruptcy filing. The Court, therefore, concludes Bank One has failed to establish on this record that it is entitled to judicial foreclosure as a matter of law.

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment (#217) and **DENIES** Plaintiff's [Cross] Motion for Summary Judgment (#229).

---

under the Deed of Trust rather than a trustee. The original trustee was Regional Trustee Services, LLC, and Northwest Regional Trustee Services, LLC, was later appointed as successor trustee.

IT IS SO ORDERED.

DATED this 4th day of February, 2004.


                                        /s/ Anna J. Brown

                                        _____

                                        ANNA J. BROWN
                                        United States District Judge


                                        RobertsCV02-499-02-02-04.wpd


26 - OPINION AND ORDER